HIAWATHA GIN CO., v. MISSISSIPPI FARM BUREAU COTTON
ASS'N.*

(Division B. March 23, 1925.)

[103 So. 345. No. 24766.] ·

1. BAILMENT. *Inspection of books of public gin limited to interested persons making specific application showing rights to be protected.*

Section 4750, Hemingway's Code (chapter 132, Laws of 1908), does not require a public gin to submit all of its books and records to any person who desires to see them. A person must have an interest to be affected by such books and records before he is entitled to inspection, and his application for such an inspection must be specific and reasonable, and must show a particular right or rights which he is seeking to preserve or protect by such inspection.

2. BAILMENT. *Person having enforceable contract to purchase all cotton of particular persons has sufficient interest to have inspection of books of public gin of their community.*

A person who has a contract in law and enforceable by suit to purchase at the market price all cotton of a particular person or persons, has such interest in the cotton, in a proper case, as to make a reasonable inspection of the books of the public ginner in the community, where such cotton grower lives and is likely to have ginned his cotton a right enforceable by law.

3. MANDAMUS. *Required allegations of petition for mandamus to inspect records of public ginner stated; petition for mandamus must disclose with certainty facts entitling to relief.*

Mandamus will ·not be granted on a general petition alleging that a petitioner has contracts with numerous unnamed persons scattered throughout the state to purchase cotton, and that the petitioner does not know whether his customers are delivering the cotton according to contract or not. All petitions must disclose with reasonable certainty the facts entitling to relief. Under the statute above referred to, the location of the gin, the records of which an inspection is desired, and the names of the persons with whom contracts exist should be alleged.

*Headnotes 1. Bailments, 6 C. J., Section 113 (1926 Anno); 2. Bailments, 6 C. J., Section 113, (1926 Anno).

APPEAL from circuit court of Hinds County.

HON. W. H. POTTER, Judge.

Suit by the Mississippi Farm Bureau Cotton Association against the Hiawatha Gin Company for mandamus. After denial of application to remove to federal court, and overruling defendant's demurrer to petition, judgment was entered for plaintiff, from which defendant appeals. Reversed, demurrer sustained, and cause remanded.

*Watkins, Watkins & Eager,* for appellant.

## I.

THE PETITION FOR REMOVAL TO THE FEDERAL COURT SHOULD HAVE BEEN GRANTED. *State of Washington* v. *City of Tacoma,* 244, Fed. 989; *Lousel, U. S. Marshal* v. *Mortimer* (C. C. A. 5th Cir.) 277 Fed. 882; *Stevens* v. *Ohio State Tel. Co.,* 240 Fed. 759; *In re Lennon,* 166 U. S. 548, 41 L. Ed. 1110; *Burke* v. *Alcott Water Co.,* 33 L. R. A. (N. S.) 1015 Ann. Cas. 1912D, 108; *Washington* v. *Tel. Co.* (2d Ser.), Fed. Rep. vol. 1, 327.

## II.

APPELLEE NOT AN INTERESTED PERSON. Section 4750, Hemingway's Code. The appellee was not such an interested person as was contemplated by the statute. The appellee did not own any of the cotton which it had contracted to receive from its members, and which its members had contracted to deliver to it. The contracts were purely executory. The contract, with its members was one under which they were obligated to deliver to the appellee cotton produced during the years mentioned, and the appellee was under obligation to market the cotton for its members to the best advantage. It is, therefore, perfectly plain that before the contract was executed by the member making delivery the appellee had no kind of right, title, or interest in or to any specific bale of cotton, nor did it have any lien thereupon.

The statute was never intended to cover the situation presented by this petition. In this connection, we call your Honor's attention to the following authorities maintaining the view which we invoke in this case, that a general statute passed for a specific purpose, for the remedying of a well-known established evil, should not be extended to a state of facts not falling within the reason of the passage of the statute. *Enochs* v. *State, ex rel. Roberson*, 128 Miss. 361; *Henry, Ins. Commissioner* v. *State*, 130 Miss. 855.

When the statute now under construction was enacted there was no such thing as a co-operative purchasing or selling association. An organization of this kind is something novel; its exact status has not yet been defined by our court; but such an association was not within the contemplation of the law when section 4750 of Hemingway's Code, was passed.

### III.

APPELLEE DOES NOT ALLEGE FACTS SHOWING THAT IT IS ENTITLED TO THE RELIEF PRAYED FOR. (a) The petition is indefinite and uncertain, and every presumption taken against the pleader. The petition in this case should have been dismissed, if for no other reason than that the plaintiff's petition, under no circumstances, states a cause of action. The petition does not state that a single member of appellee's association failed to deliver all the cotton which it contracted to deliver. Before a litigant in a court of law or equity is entitled to relief, such litigant must state a cause of action; that is to say, must state a legal wrong entitling such litigant to a remedy. The appellee in this case does not state that it has suffered any wrong or injury; it does not state that a single one of its members has failed to deliver all the cotton to which it was entitled. Out of this failure on the part of appellee there grows a presumption that every customer and subscriber of the appellee has delivered to it all of the cotton to which the appellee is entitled. In other words, every presumption is against the plead-

er; it is presumed that the pleader states his cause of action in just as strong language as the case will permit of. The authorities are as follows: *Powell* v. *Stowers,* 47 Miss. 577; *Odom* v. *G. & S. I. R. R. Co.,* 57 So. 626, 101 Miss. 642.

The same rule is applied in courts of equity. *R. R. Co.* v. *Middleton,* 68 So. 146, 109 Miss. 199; *Y. & M. V. R. R. Co.* v. *Craig,* 79 So. 102, 118 Miss. 299.

Therefore, in this case it may be taken as conceded that the appellee could not have stated its cause of action any stronger than it has; that is to say, that the appellee could not state either that it had not received all the cotton to which it was entitled, or that, if it had, not any of it had passed through the appellant's gin; therefore, applying the rule, it may be taken for granted that the appellee's allegations legally are just as if it had alleged that it had received all the cotton to which it was entitled, or that none of it had passed through the appellant's gin. The court below made the fatal error of overlooking the fact that the appellee never once alleged harm or damage.

But, to go a step farther; For the same reasons hereinbefore pointed out, the appellee's pleadings are uncertain. The rule in respect to certainty of pleadings is the same both at law and in equity, and the authorities are as follows: *Prestige* v. *Pendleton,* 24 Miss. 80; *Carter* v. *Lyman,* 33 Miss. 171; *Perkins* v. *Sanders,* 56 Miss. 733; *Watts* v. *Patton,* 66 Miss. 54; *Adams* v. *Griffin,* 85 Miss. 1; *Delta Cotton Oil Company* v. *Natchez Cotton Oil Mill,* 101 So. 793.

(b)    The writ of mandamus will never issue except as a matter of imperative necessity.  18 R. C. L., Sub. Mandamus, par. 36 and par. 41; *Gray* v. *Mullins,* 113 Pac. 694, 15 Cal. App. 118; *George S. Chatfield Co.* v. *Reeves,* 86 Atl. 750, 87 Conn. 63, L. R. A. 1916D, 321.

To warrant a court in granting an extraordinary writ of mandamus, it must appear that the relator had a clear legal right to the performance of a particular duty, and that the law affords no other adequate or specific

remedy. *State v. Atlantic Coast Line R. Co.*, 44 So. 213, 53 Fla. 650, 13 L. R. A. (N. S.) 320, 12 Ann. Cas. 350; *People v. Chicago & E. I. R. Co.*, 104 N. E. 831, 262 Ill. 492, L. R. A. 1915D, 486; *Kennedy v. Town of Normal*, 145 Ill. App. 523; *State v. Witerowd*, 91 N. E. 956, 174 Ind. 592, 30 L. R. A. (N. S.) 886, rehearing denied, 92 N. E. 650, 174 Ind. 592, 30 L. R. A. (N. S.) 886; *Town of Windfall City v. State*, 92 N. E. 57, 174 Ind. 311; *Edgerton v. Kirby*, 72 S. E. 365, 156 N. C. 347; *City of Shawnee v. City of Tecumseh*, 150 Pac. 890, 52 Okla. 509; *Putnam Foundry & Mach. Co. v. Town Council of Barrington*, 67 Atl. 733, 28 R. I. 422; *State v. Thompson*, 192 S. W. 349, 118 Tenn. 571, 20 L. R. A. (N. S.) 1; *State v. Hempstead*, 78 Atl. 442, 83 Conn. 554, Ann. Cas. 1912A, 927; *People ex rel. O'Brien v. Butler*, 105 N. Y. S. 631, 120 App. Div. 751; *State v. Northern Pac. R. R. Co.*, 102 Pac. 24, 53 Wash. 370; *Ice v. Board of Canvassers of Marion County*, 63 S. E. 331, 64 W. Va. 544; *State v. Icke*, 118 N. W. 196, 136 Wis. 583, 20 L. R. A. (N. S.) 800; *State v. Waggensen*, 122 N. W. 726, 140 Wis. 265, 133 Am. St. Rep. 1075; *State v. District Board of Joint School Dist. No. 6 of Towns of Plymouth, Wonewoc, and City of Elroy*, 156 N. W. 477, 162 Wis. 482, L. R. A. 1916D, 399; *Owen County Council v. State*, 95 N. E. 253, 175 Ind. 610; *City of Blackwell v. Cross*, 98 Pac. 905, 22 Okla. 748; Judgment (Civ. App. 1906) 96 S. W. 774, Reversed; *Caven v. Coleman*, 101 S. W. 199, 100 Tex. 467; *Congore v. Robison*, 135 S. W. 110, 104 Tex. 141; *Washington v. Pacific Tel. Co.*, 1 Fed. (2d Ser.) 327.

We now refer to the following adjudications from this court; *Clayton v. McWilliams*, 49 Miss. 311; *Hardee v. Gibbs*, 50 Miss. 802; *Haskins v. Scott County*, 51 Miss. 406.

We respectfully submit that the high writ of mandamus, issued as part of the sovereign power of the state itself cannot be exploited by a corporation as a part of its auditing system; that this high prerogative writ will not be used in order to satisfy the suspicion, the speculation or imagination of appellee.

Before the appellee could ever maintain a bill for discovery it would have to allege that the appellant had in its possession and under its control certain information which it was entitled to receive, which would be beneficial to it, which it could not get otherwise, and which would be indispensable to it, whereby it would be damaged by not being able to get the information. *Boyd* v. *Swing,* 78 Miss. 182; 18 C. J. 1067; *Brown* v. *Swan,* 9 L. Ed. 498; 14 Cyc. 314; 9 R. C. L. 184.

## IV.

THE APPELLEE HAS AN ADEQUATE REMEDY AT LAW. 18 R. C. L., par. 44. The appellee's contract provides that if its customers shall not deliver the proper amount of cotton it shall pay to the appellee a certain stipulated sum per bale. The appellee has the right to sue its customers at law, summon the customer into court, put him on the stand and make him bring his own books.

*George Butler,* for appellee.

The only question presented by this appeal is whether under the facts stated in the petition, the association is a "person interested to make" an inspection of the records of the cotton ginned, etc., required by law to be kept by the gin company. Section 4750, Hemingway's Code.

The gin company owned and operated a number of public gins in various towns and cities of this state. Under the statute above quoted, it is required to mark each bale of cotton ginned by it, showing the owner's initials and the initials of the customer for whom the cotton is ginned, and to enter in a book or register the name of the customer, date when each bale was ginned, a record of the marks placed upon each bale, and the statute provides that the gin company "shall allow an inspection of such entries at any time by any person interested to make it."

It was further averred that the gin company was a public ginner; owned and operated a great many gins at which it ginned cotton for the public, and the location of the gins are given; the substance of the act above quoted is set out, and it is averred that during the fall of 1924, at the gins above mentioned, many members' of the association had had cotton ginned and baled by the gin company.

It was then averred that the association was interested in knowing the amount of such cotton so ginned by its members during the time mentioned, so that it might determine and know whether or not its members are delivering the cotton to it ginned and baled at said gin, as provided by the contract, and if not, the number of bales which its members had failed to deliver, so that it might properly enforce its contract with its members.

## I.

The Petition for Removal to the Federal Court was Rightfully Refused. At common law and under our statutes, mandamus lies on the petition of a private person interested to compel any inferior tribunal, corporation, board, officer or person to do, or not to do an act, the performance or omission of which the law specially enjoins, if there is no plain, adequate and speedy remedy in the ordinary course of law.

This proceeding is not a suit "of a civil nature at common law or in equity" within the meaning of the removal statutes, but is an application for an original extraordinary writ and is not removable to the Federal court. 23 R. C. L. 623; *Rosenbaum* v. *Bauer*, 30 L. Ed. 743; *Knapp* v. *Railroad* 49 L. Ed. 870, Vol. 13, Roses Notes 824, et seq., Sup. 4, Roses notes, 1376, et seq.

## II.

The Association is a "Person Interested" to Make an Inspection of the Gin Records. More than a century ago, the legislature of this state undertook to regulate

public gins and grist mills. Public gins are engaged in a public business and clearly subject to public regulations by the state.

The first act undertaking to regulate them was passed on June 13, 1822, Hutchinson's Code 261, et seq., and they have been the subject of regulation continuously since. Code of 1871, sec. 1939, et seq; Sec. 924, et seq., Code of 1880; chap. 92, Code of 1892; chap. 97, Code of 1906; and chap. 132, Laws of 1908. At an early date the principles of common law applicable to mills for the grinding of corn were extended to cotton gins, as shown by the statutes hereinbefore quoted, and as set out in *Tallahatchie Co.* v. *Holloway* (Ala.), 76 So. 434; L. R. A. 1918A, 280. And it would seem that under these principles, it was clearly within the legislature's competency to require public gins to keep certain records and to open them to the inspection of any one interested to make it. In effect, the records of the gin company are made public records, subject to inspection by anyone interested in making the inspection for legitimate purposes. 18 R. C. L. 236.

The petition sets out that the association desires to know whether its members are delivering to it the cotton ginned and baled at said gins, as required by the cooperative marketing agreement, and if not, the number of bales its members have failed to deliver, so that it may properly enforce its contract with the members. 23 R. C. L. 160-162.

It is true that no litigation is pending between the association and its members, and it may be that none will result, but the pendency of litigation is not a *sine qua non* of the right of inspection. The question is, as shown by the authorities quoted: Do the records contain information which might be useful to the association in maintaining or defending an action under the cooperative marketing agreement. The petition alleges that they do contain such information, and that the association cannot get the same information from any other source. Under such circumstances, if inspection is

refused, it may be compelled by mandamus, and this without regard to the pendency of a suit. *Perry* v. *Williams,* 12 Vroom, 332, 32 Am. Rep. 219.    To the same effect see *Brewer* v. *Watson,* 71 Ala. 299, 46 Am. Rep. 318; *Boylin* v. *Warren,* 39 Kan. 301; *Welford* v. *Williams* (Tenn.), 64 L. R. A. 418; *Re Caswell* (R. I.), 27 L. R. A. 82; *Randolph* v. *State,* 82 Ala. 527, 60 Am. Rep. 761.

Under the contract in question, the association has no equitable interest in the cotton, and the right to compel the delivery of the cotton by specific performance. There is an absolute obligation to sell and deliver on the part of the member, and an absolute obligation to buy and accept on the part of the association.    The rights of the association under a similar contract was before the court in the case of *Brown* v. *Staple Cotton Growers Association,* 132 Miss. 859.

In 25 A. L. R. 1113, and 33 A. L. R. 247, there are copious notes setting forth the various holdings of the court with respect to various contentions arising under these contracts, and at pages 255 and 256, 33 A. L. R., among others, the case of *Brown* v. *Staple Cotton Ass'n,* is referred to, and is in line with the authorities of other courts on this subject.    A number of courts have gone even further than this, and held that the rights of the association under similar contracts were superior to mortgages taken with notice of the existence of the contract.    *Dark Tobacco Growers Cooperative Ass'n* v. *Dunn, et al.,* 266 S. W. 308 (Tenn.) 311; *Kansas Wheat Growers' Ass'n* v. *Floyd, et al.,* 227 Pac. 336 (Kansas).

### III.

THE ALLEGATIONS OF THE PETITION ARE SUFFICIENT.    It was not necessary for the association to aver that it had not received all the cotton which its members were obligated to deliver to it under the contract.    The very purpose of the inspection was to determine this highly important and vital fact.    If it knew that it had not received all of the cotton it might have filed a bill against the

delinquent member and summoned the gin company in with its records. If it knew it had received the cotton, it, of course, should have no purpose to serve in making the inspection, and the very purpose in making the inspection was to determine whether or not it had received the cotton covered by the cooperative marketing agreement.

(b)  It is useless to cite authority as to the character of the writ, and under what circumstances it will issue. Our statute has prescribed the conditions under which the writ may be granted. It may be granted in any case "on the petition of any private person who is interested, the writ of mandamus shall be issued by the circuit court, commanding any inferior tribunal, corporation, board, officer, or person to do or not to do an act the performance or omission of which the law specially enjoins as a duty resulting from an office, trust, or station, where there is not a plain, adequate and speedy remedy in the ordinary course of law."

## IV.

APPELLEE HAS NOT AN ADEQUATE REMEDY AT LAW. It is true that the cooperative marketing agreement provides for recovery of liquidated damages; it also provides for the enforcement of the contract by injunction and specific performance. The first is not adequate, and in effect affords appellee no remedy at all. It is not trying to enforce its contract in this case. It is not trying to recover damages for the failure of its members to deliver cotton. It seeks to inspect the gin company's books for a specific purpose and for a legitimate purpose. It can get the information contained in the books from no other source, and the fact that a suit may be brought against the member, does not bar the proceeding. 19 Am. & Eng. Ency. of Law, 745. The equitable proceeding would not be a remedy at law at all, nor would it operate to prevent the issuance of the writ. 19 Am. & Eng. Ency. of Law, 745-47.

Argued orally by *W. H. Watkins,* for appellant, and *Geo. Butler,* for appellee.

Ethridge, J., delivered the opinion of the court.

The appellee filed a petition in the circuit court for a mandamus to compel the appellant to permit it to ex-amine the appellant's gin records.    Appellee alleged that it was a corporation without capital stock organized under chapter 179, Laws of 1922; that it had some twen-ty thousand members limited to producers of cotton, and that it had entered into a contract with each of its mem-bers for a period of five years from 1923 through 1927, by which each member obligated himself to deliver to ap-pellee all of the cotton which should be produced by such member during the said years; the form of the contract was made exhibit to the petition, the contract being uni-form between the appellee and all members; that it was necessary for appellee to handle large quantities of cot-ton in order to carry out its purposes and functions.

The petition alleged that the appellant is a public ginner operating public gins at a large number of dif-ferent named points set forth in the petition, and that the appellee had members with whom it had contracts as aforesaid in the communities where these gins were located.    It is then alleged that the petitioner would further show that it is interested in knowing the amount of cotton so ginned by its members during the time afore-said at said gins operated by the defendant so that it may determine and know whether or not its various and sundry members are delivering the cotton to it ginned and baled at said gins, as required by their contract with petitioner, and, if not, the number of bales which its members have failed to deliver, so that it may properly enforce its contract with its said members.    The peti-tion contained no allegation that any particular member of appellee's co-operative association had not complied with his or her contract, nor does it contain any alle-gation that it has good reason to believe that a partic-

ular customer or customers or members, situated in some particular community where any particular gin plant is operated, had ginned cotton at such gin and had not delivered to the petitioner all of the cotton so ginned. There was no allegation that any bale of cotton raised by any member of the cotton association, appellee, had been ginned at any particular one of the appellant's gin plants or at either of them.

The purpose of the petition was to examine the books and records of the appellant gin company, and to check such books and records against the books and records of the appellee cotton association to ascertain whether or not any cotton to which it was entitled had been ginned at the appellant's gin, and whether such cotton had been delivered to the appellee cotton association. It was alleged that the records of the appellant were public records under the law of the state of Mississippi, and that petitioner therefore is entitled to inspect the same, and it is also alleged that petitioner, cotton association, could not get such information elsewhere, and that it is without a plain, adequate, and speedy remedy in the ordinary course of law. Petitioner further alleged that it made demand for an inspection of the said records of the appellant gin company, which demand had been refused, and that all of the records of said gins were kept at the appellant's office in the city of Jackson, Miss., and petitioner prayed for mandamus to compel such inspection and examination.

Appellant first presented a petition for removal to the federal court, alleging that it was a corporation under the laws of the state of Delaware and a citizen of that state, gave bond and served notice under the removal statute, bond was approved, but the application for removal was denied. Appellant then demurred to the petition for mandamus. There are numbers of grounds of demurrer which it is not necessary to set forth with particularity. The demurrer was overruled, appellant declined to plead further, and judgment was

rendered in accordance with the prayer of the petition, from which judgment appeal is prosecuted to this court.

We do not think the cause was removable to the federal court, and the court below committed no error in refusing to remove the cause. The statute under which appellee sought its remedy is section 4750, Hemingway's Code (Laws 1908, chapter 132), which reads as follows:

"Every public ginner shall plainly mark or stamp upon each bale of cotton packed or baled by him, the number of the bale, his own initials, and the initials of the customer for whom the cotton is ginned and baled, and shall enter in a book or register the name of the customer, the date when each bale was ginned and baled, and a record of the marks placed by him upon each bale as above directed, and shall allow an inspection of such entries at any time by any person interested to make it. Any person violating any of the provisions of this section shall, upon conviction, be punished as for a misdemeanor, as provided in section 1527 of the Mississippi Code of 1906 section 1289, (this Code)."

It is first contended by the appellant that the petition does not show any title in or lien upon any cotton ginned at the appellant's gin, and that it has not such interest as would give it the right to an inspection of appellant's books required to be kept by this statute. It is contended that the appellee did not own any of the cotton which it had contracted to receive from its members and which its members had contracted to deliver to it; that such contracts were purely executory.

We think the contract which appellee cotton association had with its members gave the appellee a right to have the cotton so delivered to it in conformity to its contract; that, while it was not the owner of the legal title to or any lien upon the cotton, it had an enforceable right to secure the delivery of the cotton and that it had such interest as would, in a proper cause, constitute it a person interested to make the examination. We think, however, the petition filed does not present a case

entitling the petitioner to make the examination desired. The petition is entirely too general and uncertain.

It never was contemplated by the statute that any person should have a right to go upon a mere fishing expedition and make an examination to see whether or not he might discover some right or cause of action or something beneficial by such inspection. The party making such demand or request for inspection must make a reasonable demand, and it must be made upon a specific right or interest, or a number of such rights or interests, all of which must be presented with reasonable certainty, so that the gin company may know and appreciate the nature of the examination and the person or persons whose account or cotton is under inquiry or inspection. The statute contemplates that the petitioner should have some ground for believing that such records would show something that would affect his rights in particular persons or property. It is not permissible for a person to make demand for all the books that the company may have at its offices, or at any of its plants or gins, but such request should be limited to such persons or to such bales of cotton as petitioner or applicant has reason to believe have been ginned at the gin in question.

Of course a petitioner might have a number of such rights and might have one or more persons at each of the gin plants which would give it a right to examine the books and records of such gin so far as it would affect the particular right involved.

In the case of *Federal Trade Commission* v. *American Tobacco Co.*, 264 U. S. 298, 44 S. Ct. 336, 68 L. Ed. 696, 32 A. L. R. 786, the United States supreme court had occasion to pass upon a question somewhat similar in which the Federal Trade Commission sought by mandamus under Federal Trade Commission Act of September 26, 1914, chapter 311, section 9, 38 Stat. 717, 722 (U. S. Comp. St., section 8836i; 4 Fed. Stat. Anno. [2 Ed.], p. 581), to require production of records, contracts, memoranda, and correspondence, for inspection and making copies, in pursuance of the resolution of the Senate of

the United States passed August 9, 1921. The resolution directed the commission to investigate the tobacco situation as to domestic and export trade, with particular reference to market price to producers, etc. The Federal Trade Commission Act directs the commission to prevent the use of unfair methods of competition in commerce, and provides for a complaint by the commission, a hearing and a report, with an order to desist if it deems the use of a prohibited method proved. By section 6 (U. S. Comp. St., section 8836f) the commission shall have power, first, to gather information concerning, and to investigate, the business, conduct, practices, and management of any corporation engaged in commerce, except banks and common carriers, and its relation to other corporations and individuals; second, to require reports and answers under oath to specific questions, furnishing the commission such information as it may require. on the above subjects; third, upon the direction of the President or either house of Congress to investigate and report the facts as to alleged violation of the Anti Trust Acts (U. S. Comp. St:, section 8820 et seq.)'

By section 9 of the act it was provided that for the purposes of this act, the commission shall, at all reasonable times, have access to, for the purposes of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against, and shall have power to require by subpoena the attendance and testimony of witnesses, and the production of all such documentary evidence relating to any matter under investigation. In case of disobedience an order may be obtained from a district court, and the district courts are given jurisdiction, upon the application of the attorney-general, to issue writs of mandamus to require compliance with the act, or any order of the commission made in pursuance thereof. A petition was filed under this clause of the statute and alleged that complaints have been filed with the commission charging the respondents severally with unfair competition by regulating the prices at which

their commodities should be resold, and set forth the Senate resolution and the resolutions of the commission to conduct an investigation under the act. The trade commission contended for unlimited rights of access to respondent's papers with reference to the possible existence of practices in violation of the act. The supreme court in its opinion said:

"The mere facts of carrying on a commerce not confined within state lines, and of being organized as a corporation, do not make men's affairs public, as those of a railroad company now may be. *Smith* v. *Interstate Commerce Commission,* 245 U. S. 33, 43, 62 L. Ed. 135, 140, 38 Sup. Ct. Rep. 30. Any one who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire (*Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, 479, 38 L. Ed. 1047, 1058, 4 Inters. Com. Rep. 545, 14 Sup. Ct. Rep. 1125), and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. We do not discuss the question whether it could do so if it tried, as nothing short of the most explicit language would induce us to attribute to Congress that intent. The interruption of business, the possible revelation of trade secrets, and the expense that compliance with the commission's wholesale demand would cause, are the least considerations. It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up. The unwillingness of this court to sustain such a claim as shown in *Harriman* v. *Interstate Commerce Commission,* 211 U. S. 407, 53 L. Ed. 253, 29 Sup. Ct. Rep. 115; and was to correspondence, even in the case of a common carrier, in *United States* v. *Louisville & N. R. Co.,* 236 U. S. 318, 335, 59 L. Ed. 598, 606, P. U. R. 1915B, 247, 35 Sup. Ct. Rep. 363. The question is a different one where the state granting the charter gives its commission power to inspect.

"The right of access given by the statute is to documentary evidence—not to all documents, but to such documents as are evidence. The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. Some ground must be shown for supposing that the documents called for do contain it. Formerly in equity the ground must be found in admissions in the answer. Wigram, Discovery (2d Ed.), section 293. We assume that the rule to be applied here is more liberal, but still a ground must be laid, and the ground and the demand must be reasonable. *Essgee Co.* v. *United States,* 262 U. S. 151, 156, 157, 67 L. Ed. 917, 920, 921, 43 Sup. Ct. Rep. 514. A general subpoena in the form of these petitions would be bad. Some evidence of the materiality of the papers demanded must be produced."

It follows from this opinion that the demands of the petition are entirely too searching and indefinite, and it was error not to sustain the demurrer to the petition. The judgment, therefore, will be reversed, and the demurrer sustained, and the cause remanded.

*Reversed and remanded.*