BOARD OF SUPERVISORS PRENTISS COUNTY *v.* MISSISSIPPI STATE HIGHWAY COMMISSION.

In Banc. Nov. 28, 1949. Suggestion of Error Overruled Jan. 23, 1950.

No. 37237 (42 So. (2d) 802)

**Windham & Cunningham,** and **Cunningham & Cunning-ham,** and **W. P. Mitchell,** for appellants.

**John M. Kuykendall, Jr.,** Assistant Attorney General, for appellee.

**Montgomery, J.**

This appeal presents a controversy between the Board of Supervisors of Prentiss County and the Mississippi State Highway Commission over two bridges, one on Highway 30, and the other on Highway 4, in Prentiss County, and involves the question of which of the contending parties has jurisdiction over such bridges. The bridges were destroyed by the spring floods of 1948, and it is the contention of Prentiss County that the State

Highway Commission has jurisdiction over such bridges, and that they should be rebuilt by and at the cost of the State Highway Commission. On the other hand, the Highway Commission contends that it has never taken over the bridges from the County and consequently has no jurisdiction over them, and that the bridges should be rebuilt at the cost of the County.

As a result of this controversy, the Board of Supervisors of Prentiss County filed a petition for a writ of mandamus in the Circuit Court of Hinds County against the Mississippi State Highway Commission. The Court refused to grant the writ and dismissed the petition of the Board of Supervisors. From this judgment there is an appeal to this Court.

At the outset, the controlling statute at the time of the occurrence of the events hereinafter set out was Chapter 278, Laws of 1924, and under Section 2 of this Act it was provided that the Highway Department was authorized to take over certain lengths of the highway system specified in the Act "provided, however, that before any link of said highway system is placed under the control and supervision of the state highway department, the said link of road or highway shall be constructed by the county where the same is located and at the expense of such county. And when the board of supervisors of any county shall construct a highway from one point to another designated above which comes up to the standard required and tenders same to the highway department, said highway shall be taken over and maintained by said highway department. That on request from the board of supervisors of any county, the state highway department shall file with such board a copy of its general specifications covering the various types of improvement to be made by such counties to bring state roads to a general standard recommending the type which should be employed, and the width and character of the improvement to be made, consideration

being given to present, and reasonably probable future traffic needs, on each highway. All such highways shall be accepted by the state highway department in writing and such writing spread upon the minutes of the board of supervisors of said county, and an order entered by said board authorizing the state highway department to have supervision over and control of the maintenance of such road or highway. * * * The said highway department may accept and assume jurisdiction over the said road before it agrees to maintain or accept the bridges and may, at a later date, accept the bridges, when they are constructed according to the standard required by the state highway department and maintain the same from that date. The bridges and the roads may be considered separately by the highway department in assuming responsibility of the maintenance of same.''

On July 13, 1926, the Highway Department adopted its general specifications covering the various types of bridges to be built by such Counties and on January 9, 1929, an order was entered on the minutes of the Board of Supervisors whereby the State Highway Department took over the Booneville-Bay Springs-Dennis Road excepting ''all drainage structures not built according to the State standard plans and specifications'', and also took over the road leading from Prentiss-Tippah County Line through Booneville to Prentiss-Tishomingo County Line excepting ''all drainage structures not built according to State standard plans and specifications''.

It is undisputed in this record and the evidence clearly shows that the bridges in question on the above respective roads did not comply with the standard plan of the State Highway Department. On October 13, 1930, this Court decided Jefferson Davis County v. Riley, 158 Miss. 473, 129 So. 324, 130 So. 283, 284, in which it was held that a bridge across a natural water course is not a drainage structure and that the exception of ''all drainage structures'' in an order taking over a road by the

State Highway Department does not except a bridge over a natural water course.

It is apparent from this record that when the order of January 9, 1929; was entered on the minutes of the Board of Supervisors of Prentiss County, both the Board of Supervisors and the State Highway Department considered that in excepting all drainage structures not built according to State standard plans and specifications, the State Highway Department was under the provisions of Section 2 of Chapter 278 of the Laws 1924, separating the highway from the bridges and leaving. in the Board of Supervisors full jurisdiction over all of the bridges not built according to State standard plans and specifications, and when Jefferson Davis County v. Riley, supra, was decided, it was at least contrary to what had been contemplated by both parties at the time of the entry of the order of January 9, 1929, on the minutes of the Board of Supervisors of Prentiss County. Consequently, the State Highway Commission, on February 3, 1931, went back before the Board of Supervisors of Prentiss County and there a new order was entered on the minutes of said Board taking over the roads but ''except bridges not up to State standard, said standard being creosote timber or better, built according to Mississippi State Highway Department standard plans and under the State Highway Department supervision'', and said order provided that ''this is being done for the purpose of clearing our records according to the above mentioned law.''

In the interim between January 9, 1929, and February 3, 1931, the time when the two orders respectively were entered, Chapter 47 of the Laws of 1930, commonly known as the Stansel Act, had been passed and became effective on April 14, 1930. Under the terms of this Act, Section 2 of Chapter 278 of the Laws of 1924 was repealed and by this repeal there passed out of the law the authority therein contained to separate roads and bridges

in assuming the responsibility of the maintenance of the highway, but the repealing clause of the Stansel Act, which is Section 33 of Chapter 47 of the Laws of 1930, contains the provision that it is "provided that all roads now under the maintenance of the State Highway Department, or which the State Highway Department is under agreement to maintain, shall continue to be maintained by the State Highway Department." Accordingly, when these roads were brought forward from the authority under Chapter 278 of the Laws of 1924, to be continued under the authority of Chapter 47 of the Laws of 1930, they were brought forward with the jurisdiction in the road vested in the State Highway Commission "except bridges not up to State standards". It is clear that all along the Board of Supervisors and the State Highway Department considered that the bridges in question were excepted from the order taking over the respective roads and were included in the term "all drainage structures not built according to State standard plans and specifications", and had the case of Jefferson Davis County v. Riley not been decided there would probably have been no question about the meaning of said order, but when this became clear the State Highway Commission and the Board hastily corrected the former order by the entry of the subsequent order, both dealing with the same subject-matter and reciting that the subsequent order was being entered for the purpose of clearing the records of the Board of Supervisors and of the State Highway Commission. It is reasonable to assume that the clearing sought to be made was clearing the meaning of the term "drainage structures" by substituting therefor "bridges" and when this original order was renewed by the order of February 3, 1931, the renewal superseded the old order and the new order became the subsisting obligation between the parties, this being the manifest intention from the language of the order itself and expressed as the purpose thereof.

At the time this last order was entered, the Court had decided that bridges over natural water courses were not drainage structures and full knowledge of this decision is imputed to the Board of Supervisors and the State Highway Commission, and the order recites that it was for the purpose of clearing the records of the Board and of the Commission that the new order was entered so as to substitute "bridges" for "drains" and the new order superseded the old order and the bridge remained in the control of the Board of Supervisors. McArthur v. Fillingame, 184 Miss. 869, 186 So. 828.

At the time of the filing of the petition for mandamus, the Board of Supervisors of Prentiss County had full jurisdiction over the two bridges in question and the State Highway Commission had no jurisdiction whatever over them. It was the duty of the Board of Supervisors to repair and maintain said bridges and the State Highway Commission had no legal duty to maintain or rebuild said bridges.

The writ of mandamus is a discretionary writ and even in a case where an absolute legal right is shown, the writ will be withheld whenever the public interest would be adversely affected. Wood, Secretary of State v. State ex rel. Gillespie, Dist. Atty., 169 Miss. 790, 142 So. 747.

Before a writ of mandamus may issue three essentials must coexist: (1) A clear right in petitioner to the relief sought. Alex Loeb, Inc. v. Board of Trustees, Pearl River Junior College, 171 Miss. 467, 158 So. 333; Hiawatha Gin Co. v. Mississippi Farm Bureau Cotton Ass'n, 138 Miss. 605, 103 So. 345; Board of Supervisors of Winston County v. Adams, 164 Miss. 162, 144 So. 476. (2) The existence of a legal duty on the part of the defendant to do the thing which the petitioner seeks to compel. City of Greenwood v. Provine, 143 Miss. 42, 108 So. 284, 45 A. L. R. 824; Selig v. Price, 167 Miss. 612, 142 So. 504; Alex Loeb, Inc. v. Board of Trustees, Pearl River Junior College, 171 Miss. 467, 158 So. 333. (3) There must be an

absence of another adequate remedy at law. In re Validation of Bonds of McNeill Special Consol. School Dist., 185 Miss. 864, 188 So. 318; Hamilton v. Long, 181 Miss. 627, 180 So. 615.

It is clear from the above statement of the rule controlling in mandamus proceedings that the judgment of the lower court declining to grant the writ of mandamus and dismissing the petition therefor was eminently correct and proper because the jurisdiction over the bridges in question was vested in the Board of Supervisors of Prentiss County, Mississippi, and they had no clear right to the relief sought in the petition for the writ of mandamus, and for the further reason that there was no legal duty existing on the part of the State Highway Commission to do the thing which the petitioner sought to compel the State Highway Department to do, and consequently this Court finds no error in the judgment of the lower court, and it is affirmed.

Affirmed.