STATE *ex rel.* ATTY. GEN. *v.* BOARD OF SUPERVISORS, GRENADA COUNTY.

(In Banc.   March 27, 1944.)

[17 So. (2d) 433.   No. 35570.]

Russell Wright, of Jackson, for appellant.

808

**S. C. Mims, Jr., Cowles Horton,** and **W. M. Mitchell,** all of Grenada, for appellee.

811

812

Argued orally by **Russell Wright**, for appellant, and by **Cowles Horton**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

By Chapter 218, Laws 1926, the legislature designated as a state highway a road partly in Grenada County, described as follows: "A road from a point near Greenwood to a point on federal aid road near Holcomb." This road was afterwards designated as State Highway No. 7. The bridge across Cane Creek on this highway in Grenada County collapsed in 1943, and the Attorney General brought this action in mandamus to compel the board of supervisors "to repair with reasonable diligence the bridge across Cane Creek."

At the January, 1929 term of the board of supervisors an order was entered, under Section 2, Chapter 278, Laws 1924, accepting the proposal of the State Highway Department to take over the road "except all drainage structures." It was supposed by the Highway Department that exception by the term "drainage structures" would except bridges, and the bridges on this road were not in point of fact taken over by the Highway Commission. This court held however, in Jefferson Davis County v. Riley, 158 Miss. 473, 129 So. 324, 130 So. 283, decided on October 13, 1930, that bridges are not within the term "drainage structures," and because of this decision the trial court held in the present case that the bridge is in point of law under the jurisdiction of the State Highway Department even if never actually taken over by it, and the petition was dismissed.

Prior to the decision in Jefferson Davis Co. v. Riley, the legislature, by Chap. 47, Laws 1930, had passed a comprehensive act covering the subject of state highways. The road here involved was placed by that act among the class to be known as secondary state highways, and Section 2, Chapter 278, Laws 1924, under which the agreement of January, 1929 had been made, was repealed. The effect of the repeal was that every right created under or by virtue of the repealed statute disappeared with the repeal, save as to vested rights, Deposit Guaranty Bank

& Trust Co. v. Williams, 193 Miss. 432, 438, 9 So. (2d) 638; but there are no vested rights, beyond legislative control, in a contract solely between two administrative agencies of the state government. See 12 Am. Jur. Const. Law, Sec. 417, pp. 49-50.

We must look then to Chapter 47, Laws 1930, to see what was done about this road in lieu of what had been done under the repealed statute, and we find that by Section 7 of that chapter, and see also Chapter 216, Laws 1930 (Sec. 4996, Code 1930), it was enacted that "Highways under maintenance by the State Highway Department at the date of the passage of this act shall be continued under maintenance by the Commission." And Section 11 of said Chapter 47 provided that "it shall be the duty of the State Highway Commission to carry out all contracts and agreements . . . heretofore or that may be hereafter made or entered into with any county, according to the provisions and terms thereof touching any road that has heretofore been designated as a State Highway '. . . [and] to maintain all roads which are now . . . under control and maintenance of the State Highway Commission, . . . the purpose of this provision being to preserve the status quo of said highways insofar as such highways have been taken over, and . . . jurisdiction have been assumed by the State Highway Commission."

It is undisputed that the road part of this particular highway was under maintenance by the state highway department when the Acts of 1930 were passed, but it is shown that the bridges, of which the bridge here in question was one, had not been brought up to state standards and, as already stated, have never been actually taken over for maintenance by the State Highway Department, and likewise as to hundreds of others in secondary highways in all sections of the state. In this situation, following the Acts of 1930, the county and the Highway Commission, in January, 1931, made another agreement, reciting that it was "for the purpose of clearing our

records" and apparently "to preserve the status quo," to use the language of Section 11, Chapter 47, Laws 1930, whereby it was expressly stipulated that the bridges on this road had not been brought up to state standards and that for the maintenance of this highway by the State Highway Department, the bridges would not be included, and such has been the situation and the course of administration between the counties and the State Highway Department, as regards secondary highways, throughout the state down to this day.

Here, then, has been a uniform course of conduct pursued now for some fourteen years since the Acts of 1930 and of such an outstanding and highly important nature that it could not have escaped the attention of members of the legislature and yet, although many sessions of the legislature in that time have come and gone, nothing has been done about it; from which it is to be assumed that the legislative department, which has the primary duty in the premises, has been content that the stated method of administration as between the counties and the State Highway Department under the agreements made subsequent to the Acts of 1930, should be followed and continue to be followed.

This being true, this court ought not to attempt to untangle these matters by judicial pronouncement unless unavoidably necessary in the disposition of a presented case. It is not necessary to a disposition of the present appeal that we decide the question whether this bridge is under the jurisdiction of the county or whether under the State Highway Department, for the result under either view would be the same,—the judgment would be affirmed.

If we should concur in the opinion of the trial court that the bridge is under the jurisdiction of the State Highway Department, the judgment would be affirmed, of course. But if we took the opposite view and that the bridge has remained under the jurisdiction of the board of supervisors, we would still have to approve the action of the trial court on the ground that the court has no

power or authority to tell the board of supervisors in specific terms what kind of a bridge it shall maintain at the location in question. No such specifications have been prescribed by the legislature, so far as we can find. It is not averred in the petition that the board has failed to provide and maintain a bridge adequate for travel in lieu of the collapsed bridge, and it is observed that the board, in its answer, avers that "a bridge has been constructed across Cane Creek a few yards south of the Highway 7 and the same is being used by the traveling public in the transversing of said Highway No. 7." For all that the record before us discloses, the substituted bridge at present in use represents a measure of utility and suitability beyond which our power to control by mandamus could not extend,—if the power exists at all as to the kind of bridge that is to be supplied.

Moreover, there is no allegation in the petition nor any proof in the record to show that the board has not done all that it reasonably could have done or can at present do about this bridge. We must take judicial knowledge that materials for permanent bridge construction are covered by all sorts of war priorities, beyond the power of the board of supervisors, and even if the court could direct the board as to what kind and character of bridge it should erect and precisely where, such directions should not issue under present conditions. See 34 Am. Jur., Mandamus, Secs. 34, 191, 197. And Board of Sup'rs v. Lee, 147 Miss. 99, 103, 113 So. 194; Thomas v. Price, 171 Miss. 450, 456, 158 So. 206; City of Jackson v. McPherson, 158 Miss. 152, 155, 130 So. 287; Loeb v. Board of Trustees, 171 Miss. 467, 473, 158 So. 333; State v. School Board, 181 Miss. 818, 830, 181 So. 313.

We therefore dispose of this appeal on the ground, and no other, stated in the two next preceding paragraphs of this opinion, and affirm. And all that has above been said other than the specified paragraphs is to be considered as discussion introductory thereto and not as decision.

Affirmed.