512 So.2d 1271 (1987)
STATE of Mississippi, ex rel. Edwin Lloyd PITTMAN, Attorney General, and Ray Mabus, Auditor of Public Accounts for the Use and Benefit of Hancock County, Mississippi,
v.
Woodrow LADNER, Louie Ladner, Oris Ladner, Johnny Banks, and Monvel Cuevas, Billy D. Sills, National General Insurance Company, United States Fidelity and Guaranty Company, and the North River Insurance Company.
No. 56315.
Supreme Court of Mississippi.
September 16, 1987.
*1272 Edwin Lloyd Pittman, Atty. Gen. by Sara E. DeLoach, Sp. Asst. Atty. Gen., Jackson, for appellant.
Larry L. Lenoir, Gulfport, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appeal presents important questions regarding the letting of emergency school repair contracts. For one thing these school board members and the county superintendent of education entered an electrical repair contract with a firm that employed one of the school board members. This violates our conflict of interest statute and we affirm the lower court's holding to that effect. The case, however, must be remanded for an evidentiary hearing regarding the amount of the penalty.
In addition, the State has charged these school officials with violations of a statutory *1273 three competitive bid rule then in effect. Without doubt the violation occurred, but in 1980. Since the contracts were let, but before this suit was brought, the legislature abrogated those parts of the statute the Board members had offended. We should not at this late date enforce the earlier rule as the state acquired nor held any vested rights thereunder.
We affirm in part and reverse in part and remand.

II.

A.
On May 19, 1980, a tornado struck in Hancock County, causing substantial damage to Gulfview Elementary School. The morning after, the Hancock County School Board met to assess the situation. At that time the Board was composed of members Woodrow Ladner, Louie Ladner, Oris Ladner, Johnny Banks and Monvel Cuevas. Billy D. Sills was serving as the County Superintendent of Education, and Joseph Gex was the Board Attorney.
When the Board met, all members were present except for Monvel Cuevas. The Board members declared an emergency situation at Gulfview Elementary School by reason of the tornado damages. At this meeting, the Board contracted with Tom Stinson of Stinson Fence Company to clean up and replace the fence at Gulfview and authorized Superintendent Sills to hire security personnel until emergency repairs were completed, to hire personnel to clean up the buildings and grounds, and to hire personnel to repair the inside of the buildings. Thereafter, contracts were let to various local contractors for repairs at Gulfview School. Competitive bids were not sought regarding these various contracts.
From May 20, 1980, until August 29, 1980, on various dates reflected in the minutes, the School Board authorized the payment of School Board funds which totaled the following amounts:

 Bay Contractors $228,981.11
 Tommy Lane 4,840.00
 Gulf Coast Security Systems, Inc. 9,064.57
 Gulf Electric, Inc. 27,784.32
 Stinson Fence & Construction Co. $ 27,554.75
 MIRI, Inc. 52,575.00
 ___________
 TOTAL PAYMENT $350,799.75
 Less repayment by Bay Contractors 4,840.00
 ___________
 TOTAL EXPENDITURES $345,959.75

Among the local contractors hired was Gulf Electric Inc., which employed one of the Board members, Louie Ladner. Pursuant to instructions by the Board, Superintendent Sills obtained Gulf Electric to do the electrical repair work at the school. The Board approved these arrangements. Fearing a conflict of interest as a result of this contract, Louie Ladner discussed with the Board attorney the problem of his participating in the letting of a contract to his employer. The attorney advised Louie that he saw nothing legally wrong with the Board giving the contract to Gulf Electric so long as Louie abstained from voting on any matter dealing with it. Louie followed this advice. He did not vote to award the contract to Gulf Electric nor regarding the payment of bills to Gulf Electric. However, Louie actually worked while an employee of Gulf Electric on the project at Gulfview School.

B.
On February 8, 1982, the State of Mississippi, acting by and through its duly empowered Attorney General and State Auditor, see Canton Farm Equipment, Inc. v. Richardson, 501 So.2d 1098, 1106, 1109 (Miss. 1987), commenced the present civil action by filing its complaint in the Chancery Court of Hancock County. Named as Defendants were the five School Board members and Superintendent Sills.
The complaint charged that, during the period between May 20, 1980, through and including August 29, 1980, the Hancock County School Board members and Superintendent Sills had voted repeatedly to contract with certain companies and individuals for repairs and construction on the Gulfview Elementary School and had authorized payments for these repairs and construction all in violation of the three competitive bids requirement of Miss. Code Ann. §§ 31-7-39, 31-7-41, 31-7-43, 31-7-45 and 37-11-27 (1972). Additionally, the *1274 State charged that Defendants had violated the conflict of interest statute, Section 37-11-27, and were liable for repayment to the school's treasury of all sums paid to Gulf Electric, Inc. The complaint further alleged that each School Board member and Superintendent Sills were liable, individually and on their respective official bonds, for penal damages for departing from the statutory method of letting contracts.
Thereafter, all Defendants moved to dismiss pursuant to Rule 12(b)(6), Miss.R. Civ.P., charging that the complaint failed to state a claim upon which relief could be granted because the statutory authority upon which the complaint was based had been repealed effective January 1, 1981. Subsequently, the State of Mississippi moved for summary judgment, followed by the Defendants' cross-motion for summary judgment.
On September 28, 1984, the Chancery Court granted partial summary judgment in favor of Defendants, holding that the State had no enforceable rights under the three competitive bid rule of Section 31-7-43, because that rule had been repealed prior to the State acquiring any vested right thereunder. On the conflict of interest claim, the Chancery Court granted partial summary judgment in favor of the State pursuant to Section 37-11-27, against each board member and Superintendent Sills in the sum of $27,784.32. Four Board members and Superintendent Sills were assessed additional $5,000.00 penalties. Board member Monvel Cuevas was assessed a $4,000.00 penalty.
Aggrieved by the Chancery Court's order, the State appeals the partial summary judgment rendered against it, and Defendants cross-appeal opposing the partial summary judgment granted against them.

III.
The State's appeal turns on a question of choice of law in time. By virtue of statutory directive in effect in 1980, the School Board was required to obtain competitive bids from "at least three reputable concerns" for all of the work done rebuilding and repairing the school. Miss. Code Ann. § 31-7-43 (1972).[1] This was so, even *1275 though the tornado damage created the obviously unanticipated need that extensive repairs be made as quickly as possible.
Effective January 1, 1981, the three bid requirement was repealed. The appeal turns on whether we consider the governing law that found in the statute effective in 1980 or that in the statute as it reads today.
Put otherwise, the School Board without question violated the three bid requirement. If Section 31-7-43 as it read in 1980 is enforceable, the judgment below must be reversed. On the other hand, with the exception to be noted in Section IV below, the School Board complied with the statutes as they read today. See Miss. Code Ann. § 31-7-13(k) (Supp. 1986).
This Court has on many occasions  in the context of litigation between the state or one of its officers and an individual, firm or corporation  considered the effect of a statute after it has been repealed.[2] The most frequently cited statement of the rule appears in Stone v. Independent Linen Service Co., 212 Miss. 580, 55 So.2d 165 (1951):
... [T]he effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, ... unless the repealing . .. statute contains a saving clause. [citations omitted]
The result of this rule is that every right or remedy created solely by the repealed ... statute disappears or falls with the repealed ... statute, unless carried to final judgment before the repeal .. .  save that no such repeal ... shall be permitted to impair the obligation of a contract or to abrogate a vested right.
212 Miss. at 586-87, 55 So.2d at 168 [quoting from Deposit Guaranty Bank & Trust Co. v. Williams, 193 Miss. 432, 438, 9 So.2d 638, 639 (1942)]. See also Horne v. State Building Commission, 233 Miss. 810, 825, 103 So.2d 373, 380-81 (1958); McCullen v. Sinclair Refining Co., 207 Miss. 71, 77-78, 41 So.2d 382, 384 (1949); Stone v. McKay Plumbing Co., 200 Miss. 792, 811-12, 26 So.2d 349, 350 (1946), suggestion of error sustained, 200 Miss. 792, 30 So.2d 91 (1947) (subsequent legislative amendment does not retroactively render pre-amendment judgment void as the entry of such judgment caused right to vest); State Ex Rel. Attorney General v. Board of Supervisors, Grenada County, 196 Miss. 806, 814-15, 17 So.2d 433 (1944). This is the general rule followed in other states as well. See 1A Sutherland, Statutory Construction, § 23.33 (4th ed. 1985).
Repeal does not impair the obligation of a contract with the state nor abrogate a right vested in the state. Independent Linen, 212 Miss. at 587, 55 So.2d at 168. In this regard the State earnestly argues that it holds a vested right under the statutes which provide for recovery of monies misspent by public officials in derogation of statutory procedures. See Miss. Code Ann. § 31-7-57 (Supp. 1986). And it claims that this right vested before the repeal of the three competitive bid rule.
A leading treatise defines a vested right as follows:
In order to become vested, the right must be a contract right, a property right, or a right arising from a transaction *1276 in the nature of a contract which has become perfected to the degree that it is not dependent on the continued existence of the statute.
1A, Sutherland, Statutory Construction, § 23.34 (4th ed. 1985). Outside the contract and property contexts, an example of a right so vested would be a "tort" claim after it has been reduced to judgment.
In this state guidelines for governmental contracting in emergency situations are the product of legislative enactment. There is nothing per se wrong with emergency contracting absent competitive bids. Such behavior is unlawful only so long as the law makes it unlawful. But even so, the state acquires no vested right against an offending official until that official has been haled into court, proved to have violated the law, and had a final judgment rendered against him. In a non-contract, non-property right context, there can be no pre-judgment vested right, except the law creating the right provide some means for vesting short of final judgment. See Stone v. McKay Plumbing Co., 200 Miss. 792, 811-12, 26 So.2d 349, 350 (1946).
Independent Linen is a tax case where the taxing statutes were amended in 1948 so that they became more favorable to the taxpayer. The suit involved the state's claim for 1946 and 1947 taxes. The Court recited the rule quoted above and said that the question was whether the tax commissioner had taken such action prior to the amendment to create a vested right in the state to payment of the tax. The Court held that the commission had not made its assessment and, therefore, the state's right to exact the tax had not vested. The case is analogous to the one before us in that the party invoking the now repealed three competitive bid rule and seeking one last pound of the citizen's flesh is the State. The facts generating the state's entitlement to that pound no doubt preexisted the amendment, in Independent Linen as here. There, as here, however, the State's claim had not become formally vested.[3]
The State cites authority from the last century to the effect that formal vesting is not required before it may proceed under the pre-amendment statute; rather, that mere accrual is all that is necessary. See Musgrove v. Vicksburg Nashville Railroad Co., 50 Miss. 677, 683 (1874). Without regard to whether accrual may have been sufficient unto the day in 1874, the rule has been carried forward in repeated cases both before and since Independent Linen, and we find that the accrual notion has not survived. What is necessary to enable the State of Mississippi to proceed under a repealed statute is that the right the State seeks to assert be based upon some contract, property or other vested right, that the right have being as a right notwithstanding the statute's nonbeing.
The Independent Linen rule no doubt turns heads when it suggests the nonexistence of that which we know existed in 1980, if for no other reason, because we have before us the printed pages which were available in that year. Of course, the three bid rule had existence. Prior to January 1, 1981, it was susceptible of judicial enforcement. What the Independent Linen rule means is this. The legislature of this state, as the principal exponent of the public policy of this state, has declared that the three bid requirement will no longer obtain in emergency public works circumstances. Because the statute has been changed, and because this Court is obliged *1277 to act consistent with a rational reading of the legislative declaration, we have as a matter of reason, precedent and choice determined that we should stay our hand from enforcement of that which has been repealed. Put more specifically, we accord a prior consideration to the public policy pronouncement of the state qua legislature, wholly interdicting the actions of the State qua its attorney general and its auditor.
But it is not that the statute did not exist in 1980; rather, our perception of and respect for the purpose and effect of the subsequent legislative directive is such that we will no longer enforce the pre-1981 statute. Any intimation to the contrary found in Allen v. State, 440 So.2d 544, 545-46 (Miss. 1983) is simply in error.
Summarizing, in litigation between the state and an individual, where the operative statute has been repealed or amended and the litigation arises out of a pre-repeal, pre-amendment transaction or occurrence, the individual may claim and be given the benefit of the prior law in effect at the operative time where he regards it more favorable to him. But the converse is not necessarily so. Unless the state holds a contract or otherwise has a vested right, a repealed or amended statute will ordinarily not be enforced against an individual where he regards it as less favorable to him.
Applying these premises to the case at bar, we affirm so much of the Chancery Court's judgment as held that the State had no enforceable rights under the now repealed three competitive bid rule.

IV.

A.

1.
A second phase of this case arises from the electrical repair contract authorized by the Board and entered by Superintendent Sills with Gulf Electric, Inc. The contract was infected with a conflict of interest in that Louie Ladner, one of the Board members, was an employee of Gulf Electric.
Without doubt, this contract was made and entered in violation of our conflict of interest statute, Miss. Code Ann. § 37-11-27 (1972). That statute declares it unlawful for any school board member or county superintendent of education, in his individual capacity or as agent or employee of any person or firm, to have or own any interest in any contract made or let by the board of education for construction, repair or improvement of a school facility. Cf. Frazier v. State By and Through Pittman, 504 So.2d 675, 693-704 (Miss. 1987). The statute further provides that any person who shall authorize or enter into any contract so infected with a conflict of interest "shall be civilly liable" for the amount paid under the contract and, in the event that the official has furnished a bond, the surety shall be liable for such like amount. Pursuant to this provision, all Board members together with Superintendent Sills, and their respective sureties, have been held liable, jointly and severally, for the sum of $27,784.32, the amount of school funds paid Gulf Electric under the contract at issue. This much of the judgment below is not challenged here.

2.
By way of cross-appeal, the Board members and Superintendent Sills complain of the further assessment against them of certain penalties purportedly authorized by Miss. Code Ann. § 19-13-37(2) (Supp. 1986). The judgment below directs that, over and above the sums adjudged due under Section 37-11-27, Board members Woodrow Ladner, Louie Ladner, Oris Ladner and Johnny Banks be assessed penal damages in the sum of $5,000.00 and that Superintendent Sills be assessed a like amount. Board member Monvel Cuevas has been assessed damages at only $4,000.00, presumably because he did not attend the original Board meeting where the emergency was declared following the tornado and took no part in the original decision to hire Gulf Electric. Moreover, the sureties on the respective bonds filed by the five Board members and the Superintendent have been *1278 held liable for the amount of these penalties.
Section 19-13-37(2) provides as follows:
In addition to the foregoing provision, for any violation of any statute of the State of Mississippi prescribing the manner in which contracts shall be let, purchases made, expenditure or payment made, any public official who shall substantially depart from the statutory method of letting contracts, making payments thereon, making purchases or expending public funds shall be liable, individually and on his official bond, for penal damages in such amount as may be assessed by any court of competent jurisdiction, up to the sum of five thousand dollars ($5,000.00).
The Attorney General and State Auditor are among those who may bring an action to enforce same. See Canton Farm Equipment, Inc. v. Richardson, 501 So.2d 1098, 1106, 1109 (Miss. 1987).
The Board members and Superintendent Sills assert via cross-appeal various reasons why in their view the $5,000.00 penalty assessments (except for Board member Cuevas who was assessed only $4,000.00) should be vacated.

3.
The first question is whether the claim was barred under the one year statute of limitations provided in Miss. Code Ann. § 15-1-33 (1972), a statute which covers "all actions and suits for any penalty or forfeiture on any penal statute." The last act complained of occurred on August 29, 1980. The State filed its complaint on February 8, 1982. The sufficient answer is that, without regard to the viability of this one year statute of limitations were the plaintiff a private party, it is inoperative when the suit is brought on behalf of the state. Miss. Const. Art. 4, § 104 (1890) directs that statutes of limitations in civil cases shall not run against the state or any subdivision thereof. See also Gibson v. State Land Commissioner, 374 So.2d 212, 216-17 (Miss. 1979). The School Board members' statute of limitations defense fails.

4.
The Board members argue that they are not within the class of persons named by Section 19-13-37(2) as potentially subject to its penalty. Somehow, we are told, members of a county board of education are outside the coverage of the statute. The clear language of the statute, however, belies the claim. That language authorizes assessment of the penalty against "any public official... ." Each of the cross-appellants is a public official. Enough said.

5.
The Board members next argue that they did not violate any "manner" or "method" of letting contracts and hence are not covered by Section 19-13-37(2). The argument seems to be that the conflict of interest statute, Section 37-11-27, is not one which regulates the manner or method of letting school repair contracts. Not so. The rule that a school board may not contract with a firm that employs one of the board's members is a rule regulating the manner or method of letting contracts.
Close in point is our decision in State Ex Rel. Summer v. Denton, 382 So.2d 461 (Miss. 1980). In Denton the county board of supervisors paid county funds to relatives of a member of the board in violation of the nepotism statute, Miss. Code Ann. § 19-13-3 (1972). This Court held that members of a county board will be subject to penal damages for "substantially departing from the statutory method of letting contracts, making payments thereon, making purchases or expending public funds." 382 So.2d at 465. In Denton, where county board members paid funds to relatives of a member in violation of the nepotism statute, this constituted a substantial departure from Section 19-13-3 and, therefore, the members were liable for penal damages pursuant to Section 19-13-37(2). 382 So.2d at 466. Implicit is the idea that the nepotism statute regulated the method of letting contracts.
On these facts, which are uncontradicted, we hold that contracting with Gulf Electric, a firm with which Louie Ladner *1279 was employed, constituted a "substantial departure" from the directives of the conflict of interest statute, Section 37-11-27. The conflict of interest statute is one prescribing the manner and method of making school repair contracts. The fact that Ladner's compensation from his employer was not dependent upon his employer receiving the contract is of no moment. The statute declares the relationship unlawful and that is that. Cf. Frazier v. State by and Through Pittman, 504 So.2d 675, 702-03 (Miss. 1987).

6.
The Board members next assert a good faith defense to the penalty assessment. This defense is predicated upon the fact that they sought the advice of the Board's attorney before entering the Gulf Electric contract. That advice, we are told, was that no violation of the conflict of interest statute would occur so long as Louie Ladner refrained from participating in any action regarding that contract. The record indeed reflects that Ladner took no part in authorizing the contract nor did he cast a vote authorizing any payment under the contract.
Insofar as we may be concerned with the violation of Section 37-11-27, the conflict of interest statute, we again have a matter which is simply beside the point. That statute declares a relationship unlawful. Cf. Frazier, 504 So.2d at 702-03. Included is the specific relationship we have here, one where a school board member is an employee of a firm with which the school board contracts. There is nothing in Section 37-11-27 which suggests that violation may be avoided where the offending board member takes no part in the board proceedings with reference to the contract nor is there anything in the statute which would lead one to think that an attorney's advice to that effect would somehow cure the illegality. The question for the moment, however, is whether such advice of counsel is sufficient to vitiate imposition of the penalty under Section 19-13-37(2). We hold that it is not.

B.
United States Fidelity & Guaranty Company (USF & G), surety for Billy D. Sills, County Superintendent of Education, has cross-appealed. USF & G challenges the Chancery Court's partial summary judgment against it and its principal, Superintendent Sills, on grounds that Sills was not liable for any violation of state statutes. USF & G contends that the decision to declare an emergency and assign to Sills the responsibility of seeing that repairs were made was a policy decision made by the Board. As such, Sills was under a responsibility[4] to discharge the duties assigned to him by the Board and he had no voice in the decision. USF & G argues that in fact Sills was prohibited by statute from participating in such decisions, see Miss. Code Ann. § 37-5-61(2) (1972), and that it is the county board's responsibility and not the superintendent's to pass on the legality of approving payments to private contractors.
The sufficient answer is found in the language of Section 37-11-27, the statute Sills is said to have violated. This is the statute, referred to above, making it unlawful for the School Board to enter a contract for school repairs where a Board member is employed by the contracting firm. Among the persons prohibited from making, authorizing or entering any such contract is "the county superintendent of education or any superintendent ... of a county board of education or any school district." Moreover the record reflects without contradiction that Sills did in fact execute the contract with Gulf Electric and did in fact recommend the payment of monies under it. He falls within the proscriptive language of Section 37-11-27 notwithstanding that as a matter of law his decisions may have been at the direction of or subject to being overruled by the School Board.
There is good reason why Section 37-11-27 includes the superintendent as well as the school board members, and why the *1280 statute should be so read. The superintendent is the full time chief administrative official of the school district. On the other hand, the school board members serve the schools only part-time and for quite modest pay. They are persons who as a practical matter often do not have the opportunity to investigate fully all of the facts and circumstances with respect to which they are legally charged with taking action. As a matter of institutional necessity and common practice, school board members often give considerable deference to recommendations made by the superintendent. The superintendent, thus, is subject to the conflict of interest statute and is also a "public official" within the meaning and contemplation of the penalty statute, Section 19-13-37(2).
The present emergency procedures statute (Section 31-7-13(k)) provides that if the board declares an emergency, then the provisions for competitive bidding shall not apply and
any officer or agent of such governing authority [county board] having general or special authority therefor in making such purchase or repair shall approve the bill presented therefor, and he shall certify in writing thereon from whom such purchase was made, or with whom such a repair contract was made. At the board meeting next following their emergency purchase or repair contract, documentation of the purchase or repair contract, including a description of the commodity purchase, the price thereof and the nature of the emergency shall be presented to said board and shall be placed on the minutes of the board of such governing authority.
Miss. Code Ann. § 31-7-13(k) (Supp. 1986).
Substantially the same language appears in the predecessor to this statute and the original emergency procedures statute which is the statute in issue in the instant case. This language in the emergency procedures statute seems to contemplate a governing authority granting general or specific authority to an official to carry out repairs subject to later approval by the governing authority, or county board.
In the instant case, the school board authorized Sills "to initiate emergency repairs to the Gulfview Elementary School to protect the property and equipment." Sills obtained Gulf Electric to do the electric repair work on the Gulfview School, and the Gulf Electric contract was subsequently approved by the school board. A reasonable construction of this order suggests that Sills had the authority to enter into contracts on behalf of the Board, subject to the Board's subsequent approval. Superintendent Sills was liable as well as the county school board members for violating the conflict of interest statute.

C.
The matter of the amount of the penalty presents different questions. Here it is important to understand that the Chancery Court was acting upon the State's motion for summary judgment. While there is no question but that a civil action under Section 19-13-37(2) may be heard and adjudged under the summary judgment procedure authorized under Rule 56, Miss.R. Civ.P., the standards generally applicable to such motions remain in full force and effect. The moving party is entitled to judgment only if it shows the absence of a genuine issue of material fact and that on the facts established that party is entitled to judgment as a matter of law. Conflicts in the evidence must be viewed in the light most favorable to the party against whom the motion has been made. See, e.g., Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983).
We have no doubt that the uncontradicted facts establish all six Defendants' liability for a penalty under Section 19-13-37(2). We have considerable doubts regarding what penalty should be assessed. To begin with, the Chancery Court's final judgment simply assesses a $5,000.00 penalty against Woodrow Ladner, Louie Ladner, Oris Ladner, Johnny Banks and Billy D. Sills and their sureties, followed by a $4,000.00 penalty against Monvel Cuevas and his surety. There is nothing in the record suggesting how the Court determined the amount of the penalty, nor did the Chancery Court *1281 share with us the reasoning that led to its determination of the amounts of the six penalty assessments. We can only surmise that the penalty assessed against Monvel Cuevas was $1,000.00 less than the others because of his absence from the meeting which authorized the contract with Gulf Electric.
Section 19-13-37(2) authorizes a penalty "up to the sum of five thousand dollars ($5,000.00)." Although the statute contains no criteria for determining the amount of the penalty, we find that it should be read that the most severe penalty, $5,000.00, should be assessed for violations regarding the method and manner of letting public contracts which are most egregious and inimical to the public interest. The court should consider the totality of the circumstances before determining the amount of the penalty. If there be factors in mitigation, the court should consider those and within its sound discretion assess a penalty at less than $5,000.00 if it deems such necessary and appropriate. While advice of counsel affords no defense to the assessment of the penalty, it may be considered regarding the amount of the penalty. Factors such as the reasonableness of the advice, the fact and reasonableness of the public official's reliance upon the advice, and any other circumstances that may be relevant, ought be considered.
On this record, we find these matters sufficiently disputed and controverted that the amount of the penalty should not have been determined via summary judgment. We vacate the amount of the penalties assessed against each of the defendant Board members and remand to the Chancery Court for a full evidentiary hearing. As indicated above, we hold that some penalty must be assessed. At the conclusion of the evidentiary hearing the Chancery Court is authorized and directed to assess such penalty as may be just and appropriate under the circumstances up to but not to exceed $5,000.00 per person. The sureties on the official bonds of each of the School Board members and the Superintendent, of course, should be named in any judgment imposing the penalty.
ON DIRECT APPEAL, AFFIRMED; ON CROSS-APPEAL, AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
WALKER, C.J., and GRIFFIN, J., not participating.
NOTES
[1] In 1980, when the Board declared the emergency, Miss. Code Ann. § 31-7-43 delineated the manner for letting contracts in an emergency situation:

In cases of emergency, by order spread upon the minutes of the board or other governing authority stating the nature of such emergency in which an itemized statement of work required to be done or required equipment, heavy equipment, or supplies has been submitted to at least three (3) reputable concerns licensed to do business in the State of Mississippi for the work, equipment, or supplies sought, such an emergency or urgent contract or purchase may be made from the lowest and best bidder; and any officer or agent of such board or other governing authority having general or special authority therefor in letting such contract or making such purchase shall approve the bill presented therefor and he shall certify in writing thereon to whom such itemized statement was submitted and the sum bid by each of such dealers.
"Emergency" as such term appears in this section shall refer only to situations resulting from natural disasters such as floods, tornados, hurricanes, earthquakes, or other acts of God, and to situations resulting from civil disorder or conflicts demanding immediate action.
See Miss. Laws 1975, ch. 470, § 3.
Effective January 1, 1981, this statute was repealed. A different emergency procedure was recodified in Miss. Code Ann. § 31-7-13(e):
If the governing authority through its designee shall determine that a real emergency exists in regard to the purchase of any commodities, so that the delay incident to giving opportunity for competitive bidding would be detrimental to the interest of the governing authority, then and in such event, the provisions herein for competitive bidding shall not apply and any officer or agent of such governing authority having general or special authority therefor in making such purchase shall approve the bill presented therefor, and he shall certify in writing thereon from whom such purchase was made. At the board meeting next following the emergency purchase, including a description of the commodity purchased, the purchase price thereof and the nature of the emergency shall be presented to said board and shall be placed on the minutes of the board of such governing authority. Notice of each and every emergency purchase made by such governing authority shall be filed by the clerk thereof with the state auditor for informational purposes on forms prescribed by said office.
See Miss. Laws 1980 ch. 440, § 6.
Subsequently, the legislature modified the emergency procedures provision and it is now codified as Miss. Code Ann. § 31-7-13(k):
If the governing authority, or the governing authority acting through its designee, shall determine that an emergency exists in regard to the purchase of any commodities or repair contracts, so that the delay incident to giving opportunity for competitive bidding would be detrimental to the interest of the governing authority, then and in such event, the provisions herein for competitive bidding shall not apply and any officer or agent of such governing authority having general or special authority therefor in making such purchase or repair shall approve the bill presented therefor, and he shall certify in writing thereon from whom such purchase was made, or with whom such a repair contract was made. At the board meeting next following the emergency purchase or repair contract, documentation of the purchase or repair contract, including a description of the commodity purchased, the price thereof and the nature of the emergency shall be presented to said board and shall be placed on the minutes of the board of such governing authority.
See Miss. Laws 1981, ch. 306, § 2.
[2] For a discussion of the effects of an amendment to a statute in litigation between private individuals, see Mladinich v. Kohn, 186 So.2d 481, 483 (Miss. 1966).
[3] Conversely, a taxpayer most certainly may claim the protections of a repealed or amended statute with respect to his tax liability for years prior to the effective date of the repealer or amendment. In General Motors Corporation v. Mississippi State Tax Commission, 510 So.2d 498, 499 n. 1 (Miss. 1987), we held General Motors' 1979 income tax liability determinable by reference to the law as it existed in 1979, notwithstanding an amendment effective January 1, 1983, which would have produced a victory for the state tax commission had it been held to have effect in 1979. We reached a similar result in Mississippi State Tax Commission v. Dyer Investment Co., Inc., 507 So.2d 1287, 1290 (Miss. 1987) (taxpayer's liability for 1980, 1981 and 1982 held governed by law then in effect, notwithstanding 1985 amendment). A contrary result in these and like cases is precluded by the taxpayer's due process rights. The State of Mississippi, of course, is not within the protections of the due process clauses of either federal or state constitutions.
[4] USF & G asserts that Miss. Code Ann. § 37-5-91(u) (1972) grants Sills this responsibility.