# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-00276-SCT

*USPCI OF MISSISSIPPI, INC. AND KIRK FORDICE, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF MISSISSIPPI*

*v.*

*STATE OF MISSISSIPPI EX REL. DEIRDRE S. MCGOWAN AND DEIRDRE S. MCGOWAN, INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/94 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JAMES M. HOOD, III |
| | JOHN L. MAXEY II |
| | PHILIP CAREY HEARN |
| ATTORNEYS FOR APPELLEES: | HENRY P. PATE |
| | JOHN M. FORD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 2/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/6/97 |

**BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This appeal is an outgrowth of another case, ***Fordice v. Thomas***, 649 So. 2d 835 (Miss. 1995). In many ways, a proper understanding of that case is essential to the comprehension of this one. In that case, this Court held that a literal reading of Miss.Code Ann. § 25-43-5 (1972) dictated that the Governor's Office (Governor) of the State of Mississippi is an "agency" within the meaning intended by the Administrative Procedures Law (APL), Miss.Code Ann. § 25-43-1 *et seq.* (Supp. 1995) and that any capacity assurance plan was a "rule" within the meaning of the APL. As a result, the Governor had to comply with the requirements of the APL before promulgating "rules" for the operation of his office which affected the rights of outside individuals.

¶2. At issue in this case is a permit to build a hazardous waste treatment facility in Noxubee County, Mississippi. Before such a facility can be constructed, the state must submit a capacity assurance plan

(CAP) to the U.S. Environmental Protection Agency (EPA). The CAP is Mississippi's 20-year plan for dealing with hazardous waste treatment, storage, and disposal in the state. Under 42 U.S.C. § 9604(c)(9), the adoption of a CAP and the acceptance thereof by the President of the United States is a prerequisite for receiving non-emergency federal remedial action funding ("Superfund"), for the clean up of previous hazardous waste disposal sites. To qualify for Superfund, each state must assure the EPA that it has adequate capacity to manage, treat, store, and dispose of hazardous waste produced within its borders over a 20-year period. *Fordice v. Thomas* 649 So.2d at 838.

¶3. Because of this Court's ruling in the *Thomas* case, on September 22, 1993, the Governor filed a "Notice of Proposed Agency Adoption of Rule" with the Secretary of State's office pursuant to the requirements of the APL, specifically Miss.Code Ann. § 25-43-5. The rule, entitled, "Rule of Governor Describing Organization and Rules of Practice of Office of Governor" described the operating function of the Governor's Office and procedures which the Governor would take before making a "rule." It was a precursor to the filing of the proposed CAP. It is safe to say that but for the *Thomas* ruling by this Court, the Governor would not have filed the Notice or the Proposed Rule at all.

¶4. Deirdre S. McGowan, plaintiff and appellee (a resident of Hinds County who owns land in Jackson County, but who has no connection to Noxubee County), along with approximately eighty-five other individuals wrote to the Governor, to oppose the Governor's Proposed Rule. In response, the Governor sent all respondents who had included a return address a form letter thanking them for their comments, and informing them that the Governor had made changes to the Proposed Rule in response to some of their comments, and also informing them that the Governor planned to file the proposed CAP with the Secretary of State in late November. Specifically, the Governor changed part of the language in the proposed rule from "interested parties" to "all who care to comment," although he did leave in one reference to "interested persons" in the Final Rule. After the Governor filed his Final Rule on October 28, 1993, McGowan forthrightly filed suit charging that the Governor did not obey the mandate of the APL before filing either the Proposed Rule or the Final Rule.

¶5. In short, McGowan charges that as part of the requirement of Miss.Code Ann. § 25-43-17 that an agency provide interested parties with an opportunity to be heard and to review adverse rulings requires a full, public evidentiary hearing to determine the merits of the rule prior to its promulgation. She charges that as a result of the Governor's failure to do so, both the Final Rule and the CAP which was filed pursuant to the Final Rule are void.

¶6. The Governor and USPCI, Inc., permit applicant for the hazardous waste facility who was allowed to intervene at trial, both charge, *inter alia,* that no such hearing was necessary under Miss.Code Ann. § 25-43-17.

¶7. At trial, McGowan was the only witness for any of the parties. She testified that she was a resident of Hinds County who owned land in Jackson County. She also stated that she had no personal interest in the promulgated rule "except as a Mississippian concerned about our state." She claimed a protected right to petition the government and to expect the Governor to uphold and enforce the laws of the state. Her only interest in the Final Rule was that if she could prevent its promulgation, she could prevent the submission of the CAP without which the proposed facility could not be sited.

¶8. After hearing the evidence adduced at trial, the trial judge issued a bench opinion finding, *inter alia,* (1) that McGowan and others similarly situated had been denied the opportunity for a meaningful, substantive hearing, and that such a denial constituted a clear violation of the APL, particularly Miss.Code Ann. § 25-43-17; (2) that no meaningful record existed by which either a circuit court or a chancery court could review the Governor's administrative proceedings; (3) That there was no meaningful opportunity for public hearing (input) at the administrative level; (4) that there must be an opportunity for meaningful public input at the administrative level before judicial review; (5) that the Final Rule was adopted in violation of the APL and that the terms of the Final Rule violated the APL; (6) that the Final Rule was void. The trial judge also ordered the Governor to comply with the APL in adopting a CAP, enjoined any further action to be taken pursuant to the Final Rule, and nullified any actions already taken pursuant to the Final Rule.

¶9. Both the Governor and USPCI appealed.

## STANDARD OF REVIEW

¶10. A trial judge's findings are accorded the same deference as a jury verdict and will not be disturbed on appeal unless manifestly wrong. *RC Construction Co., Inc. v. National Office Systems, Inc.* 622 So. 2d 1253, 1255 (Miss. 1993).

## ISSUES

¶11. The Governor and USPCI both raise several issues on appeal. Those issues may be stated as follows:

**I. WHETHER THE ADMINISTRATIVE PROCEDURES LAW APPLIES TO THE GOVERNOR.**

**II. WHETHER THE TRIAL COURT HAD JURISDICTION OVER THE CASE.**

**III. WHETHER MCGOWAN HAD STANDING TO OBTAIN A WRIT OF MANDAMUS TO ENJOIN THE GOVERNOR.**

**IV. WHETHER THE TRIAL COURT FAILED TO DISMISS THE ACTION BASED UPON SOVEREIGN IMMUNITY.**

**V. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS NO MEANINGFUL RECORD FOR APPEAL.**

**VI. WHETHER THE TRIAL COURT ISSUED AN OVERLY BROAD INJUNCTION.**

**VII. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT ACTIONS TAKEN IN ACCORDANCE WITH THE FINAL RULE, INCLUDING THE GOVERNOR'S PROPOSED CAP, WERE VOID.**

### I.

**WHETHER THE ADMINISTRATIVE PROCEDURES LAW APPLIES TO THE**

**GOVERNOR**.

¶12. In ***Fordice v. Thomas***, *supra*, this Court held that the APL applied to the Governor, making his Office an agency under the literal interpretation of Miss.Code Ann. § 25-43-1 *et seq.* While the appeal of this case was pending, the Mississippi Legislature amended Miss.Code Ann. § 25-43-5 to specifically exclude the Governor from the requirements of the APL. An amended act is ordinarily construed as if the original statute had been repealed, and as far as any action after the adoption of the amendment is concerned, as if the statute had been originally enacted in its amended form. ***Beatty v. State***, 627 So. 2d 355, 357 (Miss. 1993); ***Stone v. Independent Linen Service Co.***, 212 Miss. 580, 55 So. 2d 165 (1951); ***McCullen v. Sinclair Refining Co.***, 207 Miss. 71, 41 So. 2d 382 (1949). This Court in ***Stone*** reiterated the law set forth in ***Deposit Guaranty Bank & Trust Co. v. Williams***, 193 Miss. 432, 9 So. 2d 638 (1942):

> Many decisions in this state have affirmed the rule, which generally prevails, that the effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and that a statute modifying previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause. [Citations omitted]

***Stone***, 212 Miss. 580, 586-8, 55 So. 2d 165, 168, *quoting **Deposit Guaranty***, 193 Miss. 432, 438, 9 So. 2d 638, 639.

¶13. This Court in ***State ex. rel. Pittman v. Ladner***, 512 So. 2d 1271 (Miss. 1987), considered the effect of an amended or repealed statute on existing causes. This Court stated: "[b]ecause the statute has been changed, and because this Court is obliged to act consistent with a rational reading of the legislative declaration, we have as a matter of reason, precedent and choice determined that we should stay our hand from enforcement of that which has been repealed." ***Ladner***, 512 So. 2d at 1276-77.. This Court, in summarizing the law, determined that:

> [I]n litigation between the state and an individual, where the operative statute has been repealed or amended and the litigation arises out of a pre-repeal, pre-amendment transaction or occurrence, the individual may claim and be given the benefit of the prior law in effect at the operative time where he regards it more favorable to him. But the converse is not necessarily so. Unless the state holds a contract or otherwise has a vested right, a repealed or amended statute will ordinarily not be enforced against an individual where he regards it as less favorable to him.

***Ladner***, 512 So. 2d at 1277.

¶14. "When cases are in the bosom of this Court and there is involved a statute that is modified prior to a final decision of this Court, we take that modification into consideration." ***Bell v. Mitchell***, 592 So. 2d 528 (Miss. 1991), *citing **Parker v. Bailey***, 437 So. 2d 33 (Miss. 1983).

¶15. This Court has also stated that an amendment to a statute should be treated as though it had been a part of the original statute. ***City of Clarksdale v. Miss. Power & Light Co.***, 556 So. 2d 1056, 1057 (Miss. 1990).

¶16. As a result, the Governor's Office is not an agency within the meaning of the APL. Further, the Governor did not have to comply with the requirements of the APL in adopting his proposed CAP because it is not a "rule" within the meaning of the APL.

## II.

### WHETHER THE TRIAL COURT HAD JURISDICTION OVER THE CASE.

¶**17.** The Governor also claims that the action should be dismissed because absent an express statutory provision for an appeal, there is no right to an appeal. *Bickham v. Department of Mental Health*, 592 So. 2d 96, 97-98 (Miss. 1991). Alternatively the Governor argues that this case should have been transferred to chancery court, because where there is no express statutory provision for the appeal of an administrative decision, proper jurisdiction lies in the chancery court. *Charter Medical Corporation v. Mississippi Health Plan. & Dev.,* 362 So. 2d 180, 181 (Miss. 1978).

¶18. An "appeal" is any complaint to a superior court of an injustice done by an inferior one in the general use of the word. *Illinois Central R.Co. v. Moore*, 215 So. 2d 419 (Miss. 1968). Black's Law Dictionary, 6th ed. (1990) defines "appeal" as:

> " Resort to a superior (i.e., appellate) court to review the decision of an inferior (i.e., trial) court or administrative agency. A complaint to a higher tribunal of an error or injustice committed by a lower tribunal in which the error or injustice is sought to be corrected or reversed."

¶19. What is being litigated is an act of the Governor, who is not an agency or a court. Thus, this litigation is an original action to contest the sufficiency of the Governor's actions. The circuit court is a court of general subject matter jurisdiction with authority to hear all "matters civil, subject matter jurisdiction of which is not vested in some other court." Miss. Const. of 1890, art. VI, § 156. *Barlow v. Weathersby,* 597 So. 2d 1288, 1293 (Miss. 1992). "This Court has repeatedly held that our courts have the power to hear claims that public officials have violated their mandatory, non-discretionary duties of office." *Poyner v. Gilmore*, 171 Miss. 859, 158 So. 922 (1935); *Fordice v. Thomas,* 649 So.2d at 840. It follows that the circuit court would then have jurisdiction to determine if this claim is one for violation of ministerial duties or not. Finally, since the Constitution or a statute did not vest jurisdiction in a particular court, the circuit court had the authority under our Constitution and the State Bill of Rights to entertain such a suit. *Id.* at 841.

¶20. Therefore, the circuit court had jurisdiction over this case.

## III.

### WHETHER MCGOWAN HAD STANDING TO OBTAIN A WRIT OF MANDAMUS TO ENJOIN THE GOVERNOR OR TO SUE ON BEHALF OF THE STATE.

¶21. McGowan argues that the Governor should have been required to go to the extra measure of holding a hearing prior to promulgating his rule under Miss.Code Ann. § 25-43-17. That statute requires that each agency (which the Governor purported to be when he promulgated the rule) should adopt procedures to assure that persons who give timely notice of their desire to contest the

making of any rule should have (a) the opportunity to present their views, and (b) the opportunity to review adverse rulings. There is no express requirement for a public evidentiary hearing. The Governor invited comments on the proposed rule. He argues that this was the opportunity for opponents of the rule to present their views. Presumably, those opposing the rule would be afforded the opportunity to review adverse rulings, though there appears to be no evidence as to how the second prong of the statutory requirement was to be satisfied.

¶22. It would appear that the opportunity to present one's views should be, at least to some extent, meaningful, i.e., taken seriously. McGowan's letter was taken seriously, as the Governor changed part of the Proposed Rule from "all interested persons may comment" to "anyone caring to comment may do so" in accordance with the suggestion that McGowan made to the Governor.

¶23. McGowan claims that persons opposing the rule are entitled to a hearing because "agency rules must afford minimum due process which is (1) notice and (2) opportunity to be heard." In support of this proposition, she cites *State Oil and Gas Bd. v. McGowan*, 542 So. 2d 244, 248 (Miss. 1989). In that case, the appellee was afforded a hearing by this Court because he had a property interest at stake, i.e., permits to drill oil. The interest of the appellee in the case *sub judice* is nebulous, at best. She brings suit on behalf of all Mississippians to force the Governor to uphold the laws of the state where it cannot be shown that he is breaking any.

¶24. The state Legislature provides for public hearings for agencies in instances where the legislature thinks that a hearing should be mandatory. This is a statutory directive for due process. *See*, *e.g.*, Miss.Code Ann. § 5-3-157 (Supp. 1993); *Mississippi Commission On Environmental Quality v. Parker*, 643 So. 2d 923 (Miss. 1994). Further, substantive due process provides for a hearing where a person could be deprived of a property or liberty interest. *See Mississippi High School Activities Association, Inc. v. Coleman by and on behalf of Laymon*, 631 So. 2d 768 (Miss. 1994). In the case *sub judice*, the Legislature provided for an opportunity to be heard, not a public hearing, and since no liberty or property interest has been implicated, McGowan having no personal, tangible interest in the outcome, she is not afforded a hearing as of right.

¶25. The Governor claims that McGowan's challenge to his authority cannot lie because mandamus was improper as it only applies to mandatory nondiscretionary acts of the Governor. The Governor argues that since there was no statutory requirement that he hold a public hearing prior to enacting either the Final Rule or the CAP, his decision to accept public comment and to file the Final Rule with the changes made in consideration of the comments, and to send McGowan a response to the comment and announcement of the Final Rule were all discretionary acts. Thus, Miss.Code Ann. § 25-43-17 is ineffective.

¶26. Since the Governor is not an agency, no edict emanating from his office should be considered as a rule. The Governor's contested actions were indeed discretionary. As such, mandamus cannot lie, and the case should have been dismissed under M.R.C.P. 12(b)(6) because McGowan has not stated a claim upon which relief may be granted.

¶27. Miss.Code Ann. § 11-41-1(Supp. 1993) states that a writ of mandamus shall issue on petition of the state by its attorney general or a district attorney on any matter of public interest or on petition of any private person who is interested. Since McGowan is neither the attorney general nor a district attorney, she cannot bring suit on behalf of the state. *See Jackson County School Bd. v. Osborn*,

605 So. 2d 731 (Miss. 1992). The question which remains to be answered, then, is whether McGowan's private interest is sufficient to maintain this suit.

¶28. In *Fordice v. Thomas*, *supra,* this Court construed the "standing" requirement of the Mississippi Constitution to allow a private citizen to challenge governmental actions contrary to law where the actions would otherwise escape challenge whether the basis of that challenge was constitutional or not. *Id.* at 841 (*construing Van Slyke v. Bd. of Trustees of Institutions of Higher Learning,* 613 So. 2d 872 (Miss. 1993)). The case *sub judice* now adds to the body of law concerning the propriety of the granting of a writ of mandamus. *See State v. Saenger Theatres Corp.*, 190 Miss. 391, 400, 200 So. 442, 444 (1941)(A citizen, as such, has no right to champion the rights of the public in abating a public nuisance absent statutory authority); *Bd. of Supervisors of Prentiss County v. Miss. State Highway Comm'n*, 207 Miss. 839, 847-48, 42 So. 2d 802, 805 (1949)(Before a writ of mandamus may issue three essentials must coexist: (1) a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the defendant to do the thing which the petitioner seeks to compel; (3) there must be an absence of another remedy at law); *Hancock County v. State Hwy. Comm'n*, 188 Miss. 158, 162, 193 So. 808, 810 (1940) (Mandamus may issue for the enforcement of a private right by a person whose private rights entitle him to coerce a mandatory duty). Here, there is no mandatory duty required of the Governor, but rather, a mere discretionary function.

¶29. As a result, there is no merit to this issue.

### IV.

### WHETHER THE TRIAL COURT FAILED TO DISMISS THE ACTION BASED UPON SOVEREIGN IMMUNITY.

¶30. Miss.Code Ann. § 11-46-9(1) states that:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . . (d) based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employees thereof, whether or not the discretion be abused.

¶31. However, this Court in *Fordice v. Thomas*, 649 So.2d at 839-40, stated that sovereign immunity only applied to tort claims, and

> should not be construed to immunize governmental authorities and agencies from suits other than for money damages. Consequently, the Governor's claim that sovereign immunity bars this action against him must fail.

¶32. Likewise, this suit is not for money damages, but to mandate the performance of an action. Thus, the only remedy that McGowan has is a writ of mandamus. Unfortunately for McGowan, and as already noted, there is no mandatory duty required of the Governor in this instance.

¶33. Accordingly, there is no merit to this issue.

## CONCLUSION

¶34. We therefore hold that the action of the Mississippi Legislature in amending Miss.Code Ann. § 43-25-5 has compelled our decision that the Governor of Mississippi is not an agency, therefore the decision to give notice and an opportunity to respond to a proposed action of the Office of the Governor was a discretionary action and no public hearing was mandated. We further hold that the circuit court was the proper place to bring a suit in mandamus or for a writ of injunction to challenge the mandatory, nondiscretionary actions of any public official. Finally, we hold that the suit could not be dismissed based upon sovereign immunity because sovereign immunity is limited to tort claims.

¶35. Because the effect of the legislative action was essentially the nullification of the injunction, we find it unnecessary to address the remaining contentions of error raised by the appellants as to the propriety of the trial court's action in issuing an injunction.

**¶36. REVERSED AND RENDERED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**


**McRAE, JUSTICE, DISSENTING:**


¶37. I disagree with the majority's conclusion that the Legislature's amendment of Miss. Code Ann. § 25-43-5 after this appeal was filed renders the Governor's Office not an "agency" for purposes of the APL. Its reliance upon the suggestion that "when cases are in the bosom of this Court and there is involved a statute that is modified prior to a final decision by this Court, we take that modification into consideration," *Bell v. Mitchell,* 592 So. 2d 528, 532 (Miss. 1991), is misplaced and contrary to our Constitution's prohibition against *ex post facto* laws. Accordingly, I dissent.

¶38. Ordinarily, we construe the language and applicability of the statute in effect at the time a cause of action arose, not at the time the case is before us for review. We have stated, in fact, that a statute amended after a cause of action accrues is not applicable to that case. *Churchill v. Pearl River Basin Dev. Dist.*, 619 So. 2d 900, 904 (Miss. 1993). Thus, while the Governor's office now is not an "agency" for purposes of the APL pursuant to the amended statute, we cannot say that it was not at the time the CAP was filed.

¶39. In *Fordice v. Thomas*, 649 So. 2d 835, 841-842 (Miss. 1995), this Court found that the Governor's office is an agency within the meaning of the APL. The Legislature responded to our decision in *Fordice* by amending the definition of "agency" in Miss. Code Ann. § 25-43-3 to exempt the Governor from the requirements of § 25-43-5 and other requirements of the Administrative Procedure Act, effective from and after passage on March 28, 1995. That was nearly two years after the Governor's September 22, 1993 filing of the proposed rule to which McGowan and others objected.

¶40. Both art. I, § 10 of the United States Constitution and art. III, § 16 of the Mississippi

Constitution prohibit *ex post facto* lawmaking. ***Estate of Stamper v. Stamper,*** 607 So. 2d 1141, 1148 (Miss. 1992); ***Ferguson v. Ferguson,*** 639 So. 2d 921, 943 (Miss. 1994)(McRae J., concurring in part, dissenting in part). As this Court stated in ***Moore v. Molpus***, 578 So. 2d 624, 643 (Miss. 1991), "[w]e take it as an article of faith and law that *ex post facto* laws are bad practice." The United States Supreme Court has explained the *ex post facto* clause of the United States Constitution as providing assurance that legislative enactments "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed" and to "restrict . . . governmental power by restraining arbitrary and potentially vindictive legislation." ***Weaver v. Graham***, 450 U.S. 24, 28-29 (1981)(footnote and citations omitted). For this Court to make an *ex post facto* application of an amended statute has the same effect as if the Legislature had made the statute retroactive to a certain date. At the time the CAP was filed, individuals could read the plain language of the statute and assume that the Governor's Office was subject to the requirements of the APL. *See **Fordice v. Thomas***, 649 So. 2d at 841 ("The statute expressly excludes the Legislature and the courts, but it does not exclude the governor. If the Legislature had not intended for the governor to be considered an agency, it could easily have said so.").

¶41. The majority's reliance on ***Bell v. Mitchell*** to justify the *ex post facto* application of the amended statute in the case *sub judice* is misplaced. In that case, we found only that amendment of a *remedial* statute operating in furtherance of the remedy it provided does not come within the general restriction against the retroactive application of statutory law. ***Bell,*** 592 So. 2d at 533. The statute at issue cannot be characterized as a remedial statute. Moreover, as the majority points out in its quote from ***State ex rel. Pittman v. Ladner,*** 512 So. 2d 1271 (Miss. 1987), "in litigation between the state and an individual, where the operative statute has been repealed or amended and the litigation arises out of a pre-repeal, pre-amendment transaction or occurrence, *the individual may claim and be given the benefit of the prior law in effect at the operative time where he regards it more favorable to him.*" ***Id***. at 1277 (emphasis added). Clearly, classification of the Governor's Office as an agency for purposes of the APL was to the benefit of McGowan and others interested in commenting on the proposed rule.

¶42. Finally, because of the construction of standing requirements in ***Fordice v. Thomas*** and ***Van Slyke v. Board of Trustees of Higher Learning,*** 613 So. 2d 872 (Miss. 1993), the majority incorrectly finds that McGowan does not have standing to seek mandamus in this case.

¶43. I therefore disagree with the majority that the Legislature's 1995 amendment of § 25-43-3 has any bearing on the definition of "agency" at the time the Governor's Office filed its proposed rule in 1993.